522 A.2d 548

**Stephen POYSER, Appellant,**

**v.**

**NEWMAN & COMPANY, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1986.

Decided March 17, 1987.

Mark I. Bernstein, Steven Martin, Eugene Mattioni, Philadelphia, for Amicus—"former employees".

Blake E. Dunbar, Jr., Edward J. Tuite, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA· and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This appeal had its legal genesis in a trespass action which the appellant, Stephen Poyser, filed in the Court of Common Pleas of Philadelphia County against his employer, Newman & Company, Inc. ("Newman"). By that lawsuit

appellant sought to recover damages for a physical injury he suffered while in the course of his employment. The action was grounded partly on a claim of products liability under section 402A of the Restatement (Second) of Torts (1965), and partly on a theory that Newman had caused appellant's injury by willfully disregarding governmental safety regulations and by deliberately exposing him to a known hazard. Newman responded to the suit with an Answer containing New Matter which alleged that the injuries and other losses sustained by the appellant were covered by Newman's workmen's compensation insurance policy, and further asserted that the trespass action was barred by the "exclusivity" provision in section 303(a) of The Pennsylvania Workmen's Compensation Act ("Act").[1] Appellant followed with a Reply in which he denied generally the applicability of the asserted statutory bar, but admitted that he had received payments from the employer's insurance carrier.[2] After the close of the pleadings, Newman moved for judgment on the pleadings, based on the claimed bar of section 303(a) of the Act. The trial court granted the motion and entered judgment accordingly. That order was affirmed by the Superior Court in a memorandum opinion, 344 Pa.Super. 635, 495 A.2d 620 (1985).

We granted an allowance of appeal to consider the question of whether the appellant's second asserted ground for tort recovery, that his injury was caused by deliberate derelictions of the employer, operated to take the personal injury action out of the "exclusivity" provision of section 303(a) of the Act. Although the appellant's suit also included a products-liability claim, that theory of recovery as such is not offered as a basis for negating the applicability of section 303(a).

Because the appellant suffered an adverse judgment on the pleadings, we must, for purposes of review, treat all of his well-pleaded allegations as being true. *Cantwell v.*

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 481(a).
2. The Reply concedes that the insurance carrier paid all applicable medical bills but alleges that only part of the wage loss was paid.

*Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984); *Karns v. Tony Vitale Fireworks Corp.,* 436 Pa. 181, 259 A.2d 687 (1969); *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966). The allegations of the appellant's Complaint in Trespass set forth the following. On June 7, 1983, the appellant was in the course of his employment at Newman's factory. While so engaged, he had occasion to be operating a device called a "notching" machine, which had been designed and manufactured by Newman itself.[3] Part of this machine consisted of six sharp saw-blades, which would spin when the mechanism was turned on. At some point in the appellant's operation of the machine on the day in question one of his hands came into contact with the spinning blades, causing him to lose a portion of the small finger.

In support of the products liability claim, the Complaint alleged that the employer's design and construction of the "notching" machine was defective because there was no cover or guard over the saw-blades to protect the hands of operators, and that such defect was the cause of the appellant's injury. With respect to the companion theory of liability, the Complaint alleged that Newman, despite its awareness of the danger posed by the machine, deliberately forbade its workers from using a certain "feeding" device which would have greatly reduced the risk of hand injury. Another averment was that Newman also knew that the "notching" machine did not comply with federal and state safety regulations, and, for that reason, directed the appellant to remove it on the eve of an OSHA inspection which took place about eleven days before the accident. It was again placed in full operation when the safety inspectors departed. According to the Complaint, Newman's course of conduct amounted to a deliberate and wanton disregard for the safety of its workers, and such was the cause of the appellant's injury.

**3.** According to the Complaint, Newman is in the business of "manufacturing, distributing and selling pallets and skids." There is no allegation that the employer manufactures "notching" machines for sale to others.

As noted, the trial court's order granting Newman's motion for judgment on the pleadings was based on section 303(a) of the Act, 77 P.S. § 481(a). That section provides as follows:

The liability of an employer under this act *shall be exclusive and in place of any and all other liability to such employes,* his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to *damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1)* and (2) or occupational disease as defined in section 108. (Emphasis added.)

Section 303(a) is a version of the historical *quid pro quo* that employers received in return for being subjected to a statutory, no-fault system of compensation for worker injuries. Pursuant to its terms, an employer is given immunity from lawsuits by employees for any "injury" defined as such by section 301(c) of the Act, 77 P.S. § 411. In *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983), this Court upheld section 303(a) against a challenge of unconstitutionality, and, in so doing, observed that the Act "provides the exclusive means by which a covered employee can recover against an employer for injury in the course of his employment." *Id.,* 503 Pa. at 253, 469 A.2d at 159. We further stated that, because of the provision, a tort action by an employee against his employer for "*any* work-related injury" was barred. *Id.,* 503 Pa. at 256, 469 A.2d at 160 (emphasis in original).

Despite the language of section 303(a) and our statements in *Kline,* the appellant contends that Newman in the instant case should not be permitted to assert the statutory immunity from common law actions for employee injury. In so arguing, the appellant does not rely on any concept of "dual capacity". *See, e.g., Budzichowski v. Bell Telephone Co. of Pennsylvania,* 503 Pa. 160, 469 A.2d 111 (1983).[4] And,

---

4. Under the "dual capacity" doctrine, "'an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers upon him obli-

although his Complaint sought to set forth a claim of products liability, he does not rely on that as a basis for piercing the shield of immunity. The appellant instead asserts that Newman's willful and wanton disregard for employee safety was the legal equivalent of an intentional tort, and as such, should preclude Newman from raising the section 303(a) immunity. He also contends that Newman's act of deliberately concealing the defective machine from OSHA inspectors should disqualify it from having the protection of that provision.

There is no Pennsylvania judicial authority supportive of the result the appellant seeks. The argument he presents is one based entirely on his view of the relationship between the Act and other laws and regulations which bear upon safety in the workplace. According to the appellant, if an employer is to be allowed to escape common law liability for intentional misconduct causing harm to a worker, governmental policies aimed at promoting job safety will be undermined. Analogous theories have been propounded by various writers on the subject of workmen's compensation. Some of these commentators take the position that the present statutory system of compensation, in not providing the injured worker with all that he might recover in a tort action, relieves the employer from bearing the full cost of maintaining an unsafe plant. According to these theorists, such a result should not be countenanced where an employee's injury has resulted from the employer's intentional creation of an injury-causing hazard. *See generally,* Note, *Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes,* 96 Harv. 1641, 1648 (1983).

It is true that the appellate courts of some other states have held that wanton and willful misconduct by an employer is tantamount to an intentional tort, and as such, pre-

gations independent of those imposed upon him as employer.'" *Budzichowski, supra,* 503 Pa. at 167, 469 A.2d at 114 (quoting from 2A LARSON, WORKMEN'S COMPENSATION LAW, § 72.80). See also Tatrai v. Presbyterian University Hospital, 497 Pa. 247, 439 A.2d 1162 (1982).

vents the operation of a statutory exclusive-remedy provision. *See, e.g., Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). It must be noted, however, that those cases rested on provisions in the state workmen's compensation statutes which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing. There is no such provision in The Pennsylvania Workmen's Compensation Act.

The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon section 303(a) of the Act an exception the legislature did not see fit to put there. A reading of the Act will disclose that the legislature was not unmindful of the issue of intentionally caused harm. For example, in section 301(c)(1), 77 P.S. § 411(1), it is provided that "an injury caused by an act of a third person *intended* to injure the employe because of reasons personal to him ..." does not fall within the statutory definition of a covered injury. (Emphasis added.) And, under section 205, 77 P.S. § 72, which immunizes an employee from tort actions for harm caused to a fellow employee, an exception is expressly made for the *intentional* infliction of harm. Since it is clear that the legislature had the issue of intentional harm in mind, and yet did not mention it in connection with section 303(a), we are constrained to conclude that the legislature did not intend the result for which the appellant argues.

Thus, the trial court was correct in holding that the appellant's lawsuit was barred by the Act, and properly entered judgment on the pleadings in favor of the employer.

For the reasons set forth herein, the order of the Superior Court is affirmed.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

We are called upon in this case to determine whether the "exclusivity" provision of section 303(a) of the Pennsylvania Workmen's Compensation Act (Act), 77 P.S. § 481(a), precludes a common law action against an employer who creates a hazard in the workplace by intentionally, wilfully and wantonly disregarding governmental safety regulations in conscious disregard of the risk of employee injury, where such injury, in fact, occurs. I believe that the Act does not bar this action. Accordingly, I dissent.

The majority has determined in this case that 1) appellee-employer's conduct does not arise to the level of an intentional tort; and 2) even if such conduct were the "legal equivalent" of an intentional tort, the Act precludes a common law action because intentional torts are not excepted from section 303(a) of the Act.

The majority states that the Act does not preserve "the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing [in that t]here is no such provision in The Pennsylvania Workmen's Compensation Act." Maj.Op. at 38. I am not persuaded that the omission of a specific provision to this effect precludes this Court from finding that intentional injury inflicted by the employer is not exclusively compensable under the Act.

Sixty years ago, this Court determined that intentional conduct on the part of employees was a bar to compensation under the Act. *Shoffler v. Lehigh Valley Coal Co.*, 290 Pa. 480, 484, 139 A. 192, 193 (1927) (" 'course of employment' does not include ... injuries received in the commission of an act [by an employee] which is in direct violation of the law."). *Twelve years later*, the legislature amended the Act to deny compensation when injury or death is "caused by employe's violation of the law." 77 P.S. § 431.[1]

Further, when this Court first considered the constitutionality of the Act, this landmark legislation was properly

---

1. Act of 1915, June 2, P.L. 736, art. III, § 301(a), as amended, June 21, 1939, P.L. 520, § 1.

recognized as applying to "actions at law for damages resulting from the *negligence* of employers." *Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 37, 99 A. 215, 216 (1916) (emphasis added). As recently as 1983, we reiterated our position that "the purpose of this kind of legislation was to restrict the remedy available to an employee against the employer to compensation, and to close to the employee, and to third parties, any recourse against the employer in tort *for negligence.*" *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 254–55, 469 A.2d 158, 159–160 (1983) (emphasis added). We also stated in *Kline* that "workmen's compensation law does not address losses incurred by intentional injury by employee or employer." *Id.*, 503 Pa. at 255, 469 A.2d at 160. *See also Koslop v. Cabot Corp.*, 622 F.Supp. 222, 224 (M.D.Pa.1985) ("the weight of authority supports the continued recognition of the intentional tort exception [to the "exclusivity" provision of the Act].").

I would find, therefore, that injuries caused by employers' intentional acts are not exclusively compensable under the Act.

The Montana Supreme Court stated in *Sitzman v. Schumaker*, 718 P.2d 657, 659 (Mont.1986):

There are sound policy reasons for reaching this decision. The purpose of the Workers' Compensation Act is to protect both the employer and the employee by incorporating a quid pro quo for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against his employer. To allow an employer to [commit an intentional tort] and hide behind the exclusivity clause of the Workers' Compensation Act is to disregard the purpose of the Act. Other employers would have to pay for his protection. In effect, he would have bought the right to [intentionally harm] his employees. That is not a quid pro quo. The law does not allow a wrongdoer to benefit from his wrongs.

With regard to the majority's contention that appellee-employer did not commit an intentional tort, I would hold that an intentional, wilful disregard of government safety regulations which creates a known hazard in the workplace is an intentional tort as opposed to mere negligence. Intentional, wilful and wanton misconduct carries with it "a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." Restatement (Second) of Torts, § 500 comment g. Here, appellee-employer *chose* to create a risk of injury to its employees.

Accordingly, I would reverse the Order of Superior Court and deny appellee-employer's motion for judgment on the pleadings.

PAPADAKOS, J., joins in this dissenting opinion.