**Veronica C. WENDLER, Admx. of The Estate of William R. Bauer, III, Deceased, Appellant,**

v.

**DESIGN DECORATORS, INC., And Salvatore Bonafino, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2001.
Filed Feb. 26, 2001.

---

Richard P. Myers, Philadelphia, for appellant.

Glenn M. Campbell, Philadelphia, for appellees.

Before STEVENS, MONTEMURO,* and BECK, JJ.

---

STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County granting summary judgment in favor of Design Decorators, Inc., and Salvatore Bonafino (collectively Appellees) and specifically dismissing all claims and cross-claims with prejudice. On appeal, Veronica C. Wendler, administratrix of the estate of William Bauer, alleges that summary judgment was improperly granted since (1) the Pennsylvania Workers' Compensation Act (PWCA) violates the Privilege and Immunities Clause, (2) the PWCA violates the Due Process and Equal Protection Clause, and (3) Appellees recklessly/willfully disregarded federal workplace safety standards, thereby creating an exception to the exclusivity provision of the PWCA. We affirm.

¶ 2 Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224 (1994). Pursuant to Pennsylvania Rule of Civil Procedure 1035.2, summary judgment shall be rendered whenever (1) there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, or (2) the adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Schriver, supra.*

¶ 3 The parties agree that there is no genuine issue of material fact and that the pertinent facts are as follows: In October, 1995, William Bauer, a single twenty-two-year-old male, took a seasonal job with Appellee Design Decorators, Inc. (Design Decorators), hanging holiday decorations. On November 25, 1995, at approximately 8:00 p.m., Mr. Bauer was hanging decora-

* Retired Justice Assigned to the Superior Court.

tions with the aid of another employee, Joseph Igielski, via a lift truck. Mr. Bauer stood in the aerial bucket while Mr. Igielski drove the lift truck. At some point, Mr. Igielski attempted to drive the truck, with the lift bucket raised, under a railroad bridge. Mr. Bauer, who was standing in the bucket facing forward, struck the bridge with his body before the lift bucket hit the bridge. Mr. Bauer snapped backwards, thereby breaking his back, and the lift bucket tilted backwards, resulting in the trapping of Mr. Bauer's legs. Mr. Bauer then fell approximately thirteen feet to his death.

¶ 4 After various investigations conducted by the Occupational Safety and Health Administration (OSHA), Design Decorators was cited for willful violations of the OSHA regulations. Subsequently, Mr. Bauer's mother, Veronica Wendler, filed a complaint on November 21, 1997, against Design Decorators and Salvatore Bonafino, the president of Designer Decorators, as administratrix of Mr. Bauer's estate. In the complaint, Mrs. Wendler sued for the wrongful death of her son and a survival action on his behalf. Specifically, Mrs. Wendler alleged that Appellees intentionally failed to train Mr. Igielski with regard to the operation of the truck, and Appellees' actions were grossly negligent and/or negligent.

¶ 5 On December 15, 1997, Appellees filed preliminary objections alleging, *inter alia,* that Mrs. Wendler's action was barred by the PWCA since her son's death occurred during the course of his employment. On January 26, 1998, Appellees' preliminary objections were overruled, and Appellees were ordered to file an answer. On July 2, 1998, Appellees filed the required answer.

¶ 6 On August 2, 1999, Appellees filed a motion for summary judgment alleging that Mrs. Wendler's action was barred by the PWCA. Following a hearing held on January 18, 2000, the trial court granted summary judgment in favor of Appellees, thereby dismissing Mrs. Wendler's action in its entirety. This timely appeal followed. The trial court ordered Mrs. Wendler to file a statement pursuant to Pa. R.A.P.1925(b), such a statement was filed, and the trial court filed an opinion.

¶ 7 Mrs. Wendler contends that the trial court erred as a matter of law in determining that the exclusivity provision of the PWCA barred Mrs. Wendler's survival and wrongful death actions.[1] Specifically, in her first and second issues, Mrs. Wendler argues that the PWCA is unconstitutional pursuant to the Privilege and Immunities Clause, the Due Process Clause, and the Equal Protection Clause.

¶ 8 With regard to the Privileges and Immunities Clause, we conclude that the issue was adequately addressed by the Supreme Court's decision in *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983). Mrs. Wendler acknowledges that *Kline* concluded that the exclusivity provision of the PWCA is constitutional, and, therefore, we find this appeal to be frivolous.

¶ 9 With regard to the Due Process Clause, we conclude that Mrs. Wendler has failed to explain precisely how she was denied due process. Aside from stating that "the devaluation of Mr. Bauer's life is a substantive violation of the due process clause . . . .," Mrs. Wendler has failed to explain her due process claim.

¶ 10 With regard to the Equal Protection Clause, in *Shaffer v. Procter & Gam-*

---

1. The PWCA is the exclusive means by which a covered employee can recover against an employer for injury in the course of his employment. *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 251, 469 A.2d 158, 158 (1983). Specifically, 77 P.S. § 481 provides, in relevant part:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe[e]s, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . or occupational disease . . . .

*ble,* 412 Pa.Super. 630, 604 A.2d 289 (1992), this Court specifically held that the PWCA does not violate the Equal Protection Clause. Therefore, Mrs. Wendler's constitutional challenges to the PWCA are meritless.

¶ 11 Mrs. Wendler's next contention is that this Court should "carve out" an exception to the PWCA's exclusivity provision for cases where employers recklessly/willfully disregard OSHA regulations, resulting in the death of an employee. We find that Mrs. Wendler's final issue is controlled by the Pennsylvania Supreme Court's decision in *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987), and, contrary to Mrs. Wendler's suggestion, we decline to disregard *Poyser.*

¶ 12 In *Poyser,* an employee was injured while using a machine during the course of his employment. The employee alleged that the machine violated OSHA standards and that, on the eve of an inspection by OSHA, the employer removed the machine from the workplace, only to replace it after the inspection. The employee filed a tort claim against the employer, and the trial court concluded that the claim was barred by the exclusivity provision of the PWCA. On appeal, the employee argued that the employer caused the employee's injuries by willfully disregarding governmental safety regulations and deliberately exposing the employee to a known hazard. The Pennsylvania Supreme Court concluded that such an allegation did not overcome the exclusivity provision of the PWCA and, therefore, affirmed the trial court. The Court explained:

> There is no Pennsylvania judicial authority supportive of the result the appellant seeks. The argument he presents is one based entirely on his view of the relationship between the Act and other law and regulations which bear upon safety in the workplace....
>
> It is true that the appellate courts of some other states have held that wanton and willful misconduct by an employer is tantamount to an intentional tort, and as such, prevents the operation of a statutory exclusive-remedy provision. It must be noted, however, that those cases rested on provisions in the state workmen's compensation statutes which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing. There is no such provision in The Pennsylvania Work[ers'] Compensation Act.
>
> The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon [the PWCA] an exception the legislature did not see fit to put there.

*Poyser,* 514 Pa. at 37, 522 A.2d at 551 (citation omitted).

¶ 13 Subsequently, this Court and the Supreme Court have reaffirmed *Poyser* and have expressly held that the PWCA does not contain an exception for injuries caused by the employer's intentional torts. *See Alston v. St. Paul Insurance Cos.,* 531 Pa. 261, 612 A.2d 421 (1992) (holding that exclusivity provision of PWCA prohibited tort recovery for intentional wrongdoing of employer); *Snyder v. Specialty Glass Products, Inc.,* 441 Pa.Super. 613, 658 A.2d 366 (1995) (holding that claim for emotional distress was barred by the exclusivity clause of the PWCA since there is no intentional tort exception to the PWCA); *Papa v. Franklin Mint Corp.,* 400 Pa.Super. 358, 583 A.2d 826 (1990) (same as *Snyder; supra* ); *Blouse v. Superior Mold Builders, Inc.,* 363 Pa.Super. 516, 526 A.2d 798 (1987) (holding that where employer failed to warn employee of toxicity of chemicals, removed warning labels, and assured employee that chemicals were safe, the PWCA was the exclusive remedy for the employee since there is no exception for the intentional conduct of an employer).

¶ 14 As in *Poyser,* Mrs. Wendler contends that the PWCA does not apply be-

cause of the employer's reckless/willful disregard of OSHA standards. As this Court is bound by Pennsylvania Supreme Court decisions, and *Poyser* is directly on point, we find Mrs. Wendler's final claim to be unavailing. We note that Mrs. Wendler argues that *Poyser* is distinguishable in that the employee in *Poyser* lost only a finger and received PWCA wage loss benefits, while in the case *sub judice*, Mr. Bauer lost his life and Mrs. Wendler received funeral expenses only. We conclude that the "distinguishing facts" cited by Mrs. Wendler do not require a different result.[2]

¶ 15 Moreover, we find unavailing Mrs. Wendler's argument that the case *sub judice* is more akin to *Martin v. Lancaster Battery Co. Inc.*, 530 Pa. 11, 606 A.2d 444 (1992). In *Martin*, the employee was exposed to lead fumes at his place of employment, and, therefore, was given periodic blood tests to monitor the level of lead in his blood. The employer intentionally withheld the results of the employee's blood test which indicated that the employee had been exposed to toxic levels of lead. The employee was subsequently diagnosed with chronic lead toxicity. It was determined that the employee's condition would have been less severe if the employer had not concealed the accurate test results. The employee sued his employer for fraudulent misrepresentation. On appeal, the Supreme Court held:

> The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. He is not seeking compensation for the work-related injury itself in this action. Clearly, when the Legislature enacted the [PWCA], it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the [PWCA]. *There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.*

> The aggravation of the injury arises from and is related to the fraudulent misrepresentation of the employer. Thus, the [employee] is not limited to [his] remedies under the [PWCA] and is not precluded from bringing a common law action against [his employer].

*Martin*, 530 Pa. at 16–17, 606 A.2d at 447–448 (emphasis added).

¶ 16 We conclude that the limited exception found in *Martin* does not apply to the facts of the case *sub judice*. The employee in *Martin* sought relief for the aggravation of his work-related injury caused by the employer's delay in reporting accurate blood test results. The employee was not seeking damages for the work-related injury itself. Here, Mrs. Wendler is seeking recovery in connection with her son's work-related injury; she is not seeking relief for an aggravation of that injury. As such, the exception found in *Martin* is inapplicable. *See Fry v. Atlantic States Insurance Co.*, 700 A.2d 974 (Pa.Super.1997) (holding that *Martin* stands for the proposition that both fraud and delay leading to the exacerbation of a work-related injury must be present to

---

**2.** We note that this Court has explained previously the legislative purpose of limiting an employee's (and their next of kin's) right to sue in tort:

> The Legislature ... enacted the [PWCA] to provide employees with compensation for injuries sustained within the scope of their employment. In exchange for the right to compensation without the burden of establishing fault, employees give up their right to sue the employer in tort for injuries received in the course of their employment. *Snyder v. Specialty Glass Products, Inc.*, 441 Pa.Super. 613, 658 A.2d 366, 369 (1995) (quotation omitted).

remove a claim from the exclusivity provision of the PWCA).

¶ 17 For all of the foregoing reasons, we affirm.

¶ 18 Affirmed.